UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                              Criminal #  04-10372 WGY

GEORGE KANDIRAKIS

**DEFENDANT'S MOTION FOR JUDGEMENT NOT WITHSTANDING THE VERDICT**

**Introduction**

Following the jury verdict of guilty against him on one count of conspiracy, defendant George Kandirakis orally moved for a Judgment of Acquittal After the Discharge of the Jury pursuant to the Fed. R.Crim.P. 29(c)(2). (Stating, "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.") See also, *United States  v. Allison* 616 F.2d 779, 784 (5th Cir. 1980); *Virgin Islands v. Carr*, 451 f.2d 652, 655 (3rd Cir. 1971). Here, Kandirakis argues that this Court must direct a verdict of acquittal, pursuant to Fed. R.Crim.P. 29(c) and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, because the government failed to plead and prove quantity, which is an essential element of the crime.  *Apprendi v. New York*. 530 U.S. 466, 120 S.Ct. 2348 (2000*)*.  *See also U.S. v. Gonzalez* 420 F.3d 111 (2nd Cir. 2005). (*holding*, "If the fact "supports a specific sentence *within the range* authorized" by the jury verdict, then it can constitutionally be treated as a sentencing factor (emphasis in original). On the other hand, if the fact would "expose the defendant to a greater punishment than that authorized by the jury's guilty verdict," then it must be deemed an element and submitted to the jury)(internal citations omitted). *See also United States  v. Yu,* Slip Copy, 2005 WL 2470804 (2nd Cir. 2005); *United States v. Medina,* Slip Copy,

2005 WL 2277628 (2nd Cir.2005); *United States v. Cordoba-Murgas,* 422 F.3d 65 (2nd Cir. 2005).

I.   KANDIRAKIS MUST ACQUITTED, BECAUSE THE GOVERNMENT DID NOT CHARGE, AND FAILED TO PROVE, WEIGHT WHICH IS AN ESSENTIAL ELEMENT OF THE CRIME.

At the time the Supreme Court decided *Almendarez-Torrez v. United States*, 523 U.S. 224 (1998), the sentence enhancing interpretation of drug type and threshold drug amounts was already settled precedent in the Courts of Appeals. In *Almendarez-Torrez*, the Court established a painstaking methodology of statutory inquiry into whether Congress, without expressly saying so, intended to create drug type and threshold drug amounts as a "sentencing factor" rather than an offense element. 523 U.S. at 228-39. A court must "look to the statute's language, structure, subject matter, context and history – factors that typically help courts determine a statute's objectives and thereby illuminate its text." *Almendarez-Torres*, 523 U.S., at 228, see also *Castillo v. United States*, 530 U.S. 120 (2000); *Jones v. United States*, 526 U.S. 227, 232-39 (1999). *Almendarez-Torres* adopted much of its methodology from the lower court cases construing drug type and amount as sentence-enhancing facts. 523 U.S. at 234-36. It is then, no small irony that the *Almendarez-Torres* analysis reveals that the lower courts sentencing enhancing fact interpretation of section 841 is wholly without foundation.

   A.   <u>Legislative History Reveals That Quantity Is An Element of the Offense, And The Supreme Court's Decision In *Mcmillan* – Which Is By Definition Removed From Congressional Intent - Does Not Substantiate An Inference That Quantity Is A Sentencing Factor.</u>

It is settled that legislative bodies may define sentencing factors, so long as they comport with constitutional safeguards as expressed in, for example *Apprendi.*. Yet that *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), upheld a State statute explicitly providing for the imposition

2

of mandatory minimum sentences on a judicial finding of sentencing factors, does not reveal what role Congress intended for drug quantity in the Controlled Substance Act ("CSA"). The similarity between the two statutes begins and ends with the fact that both contain mandatory minimum sentences. Whether Congress *intended* drug type and amount to be sentencing factors in the CSA cannot be discerned by reference to *McMillan* because *McMillan* represents a contextually specific judicial interpretation, while the appropriate anchor for ascertaining congressional intent is legislative history itself.

For at least 16 years after Congress passed the CSA of 1970, the courts of appeals generally considered the type and amount of a drug to be elements of a § 841 offense.[1] In this Circuit, several cases illustrate the point. In *United States v. McHugh*, 769 F.2d 860 (1st Cir. 1985), the defendant "was indicted and convicted of conspiring to possess and of possessing approximately 1,379 pounds, 9 ounces of marijuana in violation of sections 846, 841(a) and 841(b)(6)" of the CSA as amended in 1980. *Id.* at 867. He challenged the trial court's failure, after the jury verdict, to grant his motion for judgment of acquittal with respect to § 841(b)(6). This Court avoided the issue based on the fact that the sentence imposed did not exceed the five year maximum authorized by §§ 841(b)(1)(B) (1980 ver.) and 846 (1980 ver.). *Id.* at 868. Although there is language in the opinion to the effect that § 841(b)(6) is an "enhanced penalty provision," *id.*, nothing in the opinion holds, or even suggests, that the facts predicate to the penalty provision were to be assigned to the judge for determination at sentencing. *Id.* Indeed, the opinion states, "the amount of marijuana is *an essential offense element of the offense* only

---

[1] *See, e.g.*, *United States v. Crockett*, 812 F.2d 626, 628-29 (10th Cir. 1987); *United States v. Buishas*, 791 F.2d 1310, 1317 (7th Cir. 1986); *United States v. McHugh*, 769 F.2d 860, 868 (1st Cir. 1985); *United States v. Wright*, 742 F.2d 1215, 1220-21 (9th Cir. 1984); *United States v. Alvarez*, 735 F.2d 461, 466-68 (11th Cir. 1984); *United States v. Pope*, 561 F.2d 663, 669-70 (6th Cir. 1977); *United States v. Estell*, 539 F.2d 697, 699 (10th Cir. 1976) ("the presence and identity of the drug is the thing and ... the quantity is not important" under 1970 Act).

under 21 U.S.C. § 841(b)(6)." *Id.* (emphasis added).  Other decisions of this circuit established that drug type was an offense element under the CSA. *United States v. Garcia-Rosa*, 876 F.2d 209, 216, (1st Cir. 1989) (proof beyond a reasonable doubt of drug type; simultaneous possession of two drug types is two offenses); *United States v. McMahon*, 861 F.2d 8, 10-13 (1st Cir. 1988) (variance of indictment and proof; sufficiency of the evidence of drug type to support the jury verdict); *United States v. Bonilla-Romero*, 836 F.2d 39 (1st Cir. 1987) ("each of the two violations in question here requires proof of an independent fact; *i.e.*, the identity of the drugs themselves").[2]

Then, in 1986, the Supreme Court decided *McMillan*.  After, and in express or implied reliance upon, *McMillan*, every circuit court of appeal read drug type or amount, or both, out of the elements of a § 841 offense.  *See United States v. Barnes*, 890 F.2d 545, 551 n.6 (1st Cir. 1989)(type and amount).[3]  In *Barnes*, the district court had instructed the jury on the type and amount of drugs and the jury.  Without inquiring into congressional intent, the Court lowered the government's burden of proof and substituted the judge for the jury as fact-finder thus avoiding the defendant's challenge that the government failed to prove drug amount beyond a reasonable doubt.  *Id.*; *see also United States v. Lindia*, 82 F.3d 1154, 1160-61 & n.5 (1st Cir. 1996)

---

[2]The decision in *McMahon* well illustrates the illogic of attempting to deem drug type to be a sentencing factor, not an element.  Proof beyond a reasonable doubt of "a controlled substance" is simply impossible without proof of a *particular* controlled substance.

[3]*United States v. Lewis*, 113 F.3d 487, 489-92 (3d Cir. 1997) (type); *United States v. Patrick*, 959 F.2d 991, 995 n.5 (D.C. Cir. 1992)(amount); *United States v. McCann*, 940 F.2d 1352, 1354, 1358 (10th Cir. 1991)(amount); *United States v. Sotelo-Rivera*, 931 F.2d 1317, 1319 (9th Cir. 1991)(amount); *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir. 1990) (amount). *United States v. Moreno*, 899 F.2d 465, 472-74 (6th Cir. 1990)(amount); *United States v. Powell*, 886 F.2d 81, 84-85 (4th Cir. 1989)(amount); *United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir. 1989);  *United States v. Smith*, 840 F.2d 886, 888 (11th Cir. 1988)(amount); *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir. 1987)(amount); *United States v. Wood*, 834 F.2d 1382, 1388-90 (8th Cir. 1987)(amount); *United States v. Gibbs*, 813 F.2d 596 (3d Cir. 1987)(amount under 1980 amend.)

(reiterating the *Barnes* post-*McMillan* holding, and relying on *McMillan* to find no due process violation). In later cases, three-judge panels of the First Circuit erroneously read *McHugh* to mean that drug amount is *never* an element of the offense. *See*, *e.g.*, *United States v. Paine*, 935 F.2d 397, 400 (1st Cir. 1991).

The post-*McMillan* reinterpretation of the role of drug amount constitutes an application of the "dynamic view of statutory interpretation, under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution later changed," which the Supreme Court condemned in *Harris*. Kandirakis presents this Court an opportunity to correct this course.

B. <u>Congress Created Drug Amount (and Type) as Elements</u>

1. *<u>Where Congress Intends A Sentencing Factor, It Has So-Stated Explicitly; Congress Did Not Include Drug Amount and Type As Sentencing Factors</u>*

"Congress's failure to include drug type and quantity within its express sentence-enhancement provisions indicates its intent to treat these factors as elements of a crime." *Vazquez*, 271 F.3d at 111 (Becker, Ch.J., concurring in judgment); *cf. Jones*, 526 U.S. at 233; *Almendarez-Torres*, 523 U.S. at 249 (Scalia, J., dissenting). When Congress intended sentence-enhancing factors in the original CSA of 1970, it expressly said so. For example, Congress made prior convictions a basis for increasing the statutory maximum punishment, CSA § 401(b). Congress unambiguously and expressly provided that recidivism was to be determined "after conviction but before pronouncement of sentence," 21 U.S.C. § 851(b) (1994 ed.), in a hearing "before the court without a jury," albeit with the fact to be determined "beyond a reasonable doubt." *Id.* § 851(c)(1). *See also* 21 U.S.C. § 849 (1970 ed.) (repealed) (special dangerous drug offender sentencing).

5

The CSA of 1970 did not include any express provision to create sentence-enhancing factors with respect to drug type (and no drug amounts appeared). Since drug type and prior convictions appeared in § 841(b), Congress' decision not to include drug type in the original § 851 demonstrates that Congress chose to treat only prior convictions as sentence-enhancing facts, with all other operative facts remaining elements. *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1990) (Congress presumed in CSA to act intentionally and purposely in disparate inclusion or exclusion). Because Congress did not include drug amount, when it was later added to the statute, in § 851, or otherwise expressly designate it as a sentencing factor, Congress intended it to be an offense element. *See id.*

### 2. *The Structure of §841 Reveals That No Strict Dichotomy between Subsections (a) & (b) Exists*

The First Circuit construes a strict dichotomy between subsection (a) (defining elements) and subsection (b) (defining sentencing factors), but no such dichotomy exists. To the contrary, the language of Section 841 (entitled "Prohibited Acts—Penalties" in the Statutes at Large) shows that subsection 841(b), not subsection 841(a), creates criminal offenses. It defines those offenses by the elements of drug type and amount.

Subsection (a) makes certain acts *unlawful* but is incomplete as a penal statute because it does not provide punishment. *Cf. Jones*, 526 U.S. at 233-34 (statutory description of "some very obnoxious behavior" alone fails to state a crime because it neither concluded with "shall be guilty of a felony" nor "shall be punished [or 'fined and imprisoned,' etc.]"). It is black letter law that a prohibition without a specified penalty creates no crime. *See*, Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 1.2(d), at 12-13 (1986); *see United States v. Evans*, 333 U.S. 483, 486, 490-99 (1948). Rather, as the Supreme Court recently explained, subsection 841(a) creates a "statutory prohibition," subject to both civil and criminal enforcement. *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 499 (2001); *see also id.* at 486, 494 n.7.

That § 841(a) merely creates a "statutory prohibition" is confirmed in § 842, a parallel provision of the CSA ("Prohibited acts B—Penalties" in the Statutes at Large). It, too, makes certain acts "unlawful." 21 U.S.C. § 842(a). Section 842(a) only states a "statutory prohibition" because a violation of § 842(a) "does not constitute a crime" except as provided in § 842(c)(2). 21 U.S.C. § 842(a), (c)(3) (1994 ed.). *See United States v. Richardson*, 529 U.S. 813, 819 (1999). As with § 842(a), the act provides

7

criminal offenses for violations of § 841(a); in the case of § 841, these are in § 841(b)(1-3).

Subsection (b), in contrast to § 841(a), is complete as a criminal statute. In its unnumbered preamble, subsection (b) uses the active voice ("any person who violates subsection (a) ...."), which the Supreme Court deems typical offense-defining language. *Carter*, 530 U.S. at 272-73. Subsection (b) expressly incorporates an act in violation of subsection (a) as an element of a subsection (b) offense. The "violates subsection (a)" language also appears in other sections of the CSA, as amended. 21 U.S.C. §§ 849, 859-61. These sections have been consistently construed to define offenses, not sentencing provisions. *See, e.g., United States v. Chandler*, 125 F.3d 892, 896 (5th Cir. 1997) (*holding*, "§ 860, which expressly incorporates a violation of § 841(a), just as does § 841(b), is greater-inclusive offense of § 841"); *United States v. McQuilken*, 78 F.3d 105, 108 (3d Cir. 1996) (same).

Subsection (b), unlike subsection (a), contains punishment-introducing language followed by punishment. 21 U.S.C. § 841(b). In fact, each subparagraph of paragraph (b)(1) contains a primary punishment-authorizing sentence. In that sentence, a punishment-introducing clause appears twice, in the unnumbered preamble following "violates subsection (a)" and also following the specification of covered drug types and amounts. *See*, *e.g.*, *id.* § 841(b)(1)(B). The single sentence containing the two punishment-introducing clauses reads like a traditionally defined crime. For example:

> [A]ny person who violates subsection (a) of this section shall be sentenced as follows: ... (1)(B) In the case of a violation of subsection (a) of this section involving— (iii) 5 grams or more of a mixture or substance described in clause (ii) [cocaine] which contains cocaine base; . . . such

> person shall be sentenced to a term of imprisonment which may not be less than 5 years or more 40 years and if death or serious bodily injury results from the use of such substance shall not be less than 20 years or more than life, a fine not to exceed the greater of that authorized by title 18 or $2,000,000 if the defendant is an individual ..., or both.
> 21 U.S.C. § 841(b)(1)(C).

Like drug type and amount, the operative fact of causation of death or bodily injury appears in the primary offense-defining sentence when recidivism is not involved. In *Jones*, 526 U.S. at 236-37, the Supreme Court held that death and injury-causation are traditional elements, not traditional sentencing factors.

In § 841(b)(1)(B), immediately following the primary offense-defining sentence, a single sentence defines the consequences of recidivism and recidivism combined with death or serious bodily injury. This sentence, which appears in each of the subparagraphs of § 841(b)(1), refers to "such a violation," which grammatically can refer only to the violation defined in the primary offense-defining sentence contained in that subparagraph.

As with the weapon type in *Castillo*, drug type and amount appear in a single sentence with other elements, separate from the following complete sentences that address traditional sentencing concerns, such as recidivism. "These structural features strongly suggest that the basic job of the entire first sentence is the definition of crimes and the role of the remaining ... sentences is the description of factors (such as recidivism) that ordinarily pertain only to sentencing." *Castillo*, 530 U.S. at 125.

9

The subsection headings "Unlawful acts" and "Penalties", as they appear in the United States Code,[4] do not justify a finding of sentencing factors as opposed to elements of the offense. The Act Congress passed does not contain those headings. *See*, Controlled Substances Act of 1970, Pub. L. 91-513, Title II, §§ 401-10, Oct. 27, 1970, *reprinted in* Stat.L. 1466-68, 91st Cong., 2d Sess.; *see also* 116 Cong. Rec. 33624-25 (1970). The Office of the Federal Register, National Archives and Records Services added a reference to "penalties" as a margin note to the Statutes at Large after Congress passed the Act. 84 Stat. 1260; *see* 44 U.S.C. § 729 (1994 ed.). Only the bill number and date is required by law, *see id.*, and such margin notes are mere finding tools for users' convenience. *Cf. United States v. Detroit Lumber Co.*, 200 U.S. 321, 337 (1906) (court syllabus). When the CSA was reproduced in the United States Code, the editors converted the margin notes into subsection headings. *See generally* 2 U.S.C. §§ 285a, 285b(1) & (3) (1994 ed.). Because Title 21, unlike some others, has not been codified, the Statutes at Large, not the United States Code, are the authoritative source of law. *Id.* § 285b(3); 2 U.S.C., Supp. IV, at vii (1998). Congress did not enact these headings in the 1984 or 1986 amendments. Thus, no subheadings exist in the controlling statute. *Accord United States v. Buckland*, 289 F.3d 558, 565-66 (9th Cir. 2002); *Vazquez*, 271 F.3d at 111 (Becker, Ch. J., concurring). Accordingly, the fact that the headings appear in the uncodified Title 21 of the United States Code tells the Court nothing about the underlying intent of Congress.

Moreover, such uncodified headings are inaccurate as indicators of where elements are defined. *See, e.g.,* 21 U.S.C. § 842(c)(2)(A) (1994 ed.) (offense defined

---

[4]*Lewis*, 113 F.3d at 490-91; *United States v. Sotelo-Rivera*, 931 F.2d 1317, 1319 (9th Cir. 1991), *cert. denied*, 502 U.S. 1100 (1992); *United States v. Moreno*, 899 F.2d 465, 472-74 (6th Cir. 1990); *United States v. Barnes*, 890 F.2d 545, 551 n.6 (1st Cir. 1989); *United States v. Wood*, 834 F.2d 1382, 1388-90 (8th Cir. 1987).

under "penalties" heading); 21 U.S.C. § 848(a) (1970 ed.) (distinct crime entitled "Penalties; forfeitures").  When it created a separate, complete offense in § 841(b)(7), Congress itself enacted a title line, "Penalties for Distribution."  110 Stat. 3807.  Congress often uses "penalty" to distinguish crimes from civil prohibitions.

### 3. *Congress Created a Dual-axis Allowable Unit of Prosecution*

The First Circuits' speculation that Congress would not create multiple offenses in a single statute, *U.S. v. Goodine*, 326 F.3d 26 (1st Cir.2003), is unfounded.  Correctly read, subsection (b) is the offense defining provision, within which Congress created an "efficient double-axis prosecution scheme, under which each act in violation of what is now § 841(a) (manufacture, distribute, etc) could be prosecuted with respect to different drug types." *Vazquez*, 271 F.3d at 109 (Becker, Ch. J.).  That reading comports with pre-CSA federal drug laws, under which offense elements were narrowly defined so that offenses could be cumulated.  *Blockburger v. United States*, 284 U.S. 299, 302 (1932) (each sale is a crime); *Normandale v. United States*, 201 F.2d 463, 464 (5th Cir. 1953) (each drug is a separate element).

In fact, before *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), courts routinely employed this double axis prosecution scheme under the CSA.  *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986) (possession of each scheduled substance is a separate offense); *United States v. Elliot*, 849 F.2d 886, 888-90 (4th Cir. 1988) (each distribution is separate offense); *cf. Promise*, 255 F.3d at 175 (Luttig, J., concurring in judgment) (disputing "double-axis" thesis by doubting Congress created 350 different offenses).

The idea that § 841(a) contains all offense elements (and that drug type is a sentencing factor) is simply inconsistent with Congress' intent to unify federal drug laws in a single statute without relaxing their preexisting punitive force. *Vazquez*, 271 F.3d at 109; *United States v. Davis*, 656 F.2d 153, 156-60 (5th Cir. 1981). Reducing drug type to a sentencing factor constricts the reach of § 841 by broadly defining the drug element—a change from pre-CSA law and one inconsistent with this Court's *Bonilla-Romero* decision allowing consecutive sentences for each drug type precisely because drug type is an element. *Bonilla-Romero*, 836 F.2d at 46-47.[5]

The history and structure of the CSA suggest that Congress had other goals, consistent with making drug type an element, that led it to structure § 841 as it did. First, Congress intended to unify in a single statute the "plethora of legislation" creating drug offenses in diverse public health and revenue acts. H. Rep. No. 91-1444, 91 Cong. 2d Sess. (1970), [1970] U.S. Code Cong. & Admin. News, 4566, 4571; *see also* 116 Cong. Rec. 33300, 33304 (1970). Second, § 841 is but one section of a larger efficient, flexible structure for both criminalizing some and regulating other transactions in controlled substances. *See Id.* § 812 (providing five schedules of controlled substances and standards and procedures for additions and reclassifications); 21 U.S.C., Part C (regulation of legal drug industry via the five schedules). Creating a complete traditional

---

[5]Presumably, Judge Luttig believes Congress created "some 350" *sentencing factors* without an express word saying so. The panel decision asseverates that the "practical result of [its] ruling" prevents § 841(b) from creating 350 different offenses, thus (supposedly) justifying the sentence in this case. The "practical result" is decidedly impractical in light of *Collazo-Aponte*. Under *Collazo-Aponte*, the very facts the panel decision says are sentencing factors are "converted" into offense elements for purposes of raising the statutory maximum sentence. The result is that the self same facts create as many as 350 offense elements, for some purposes, and 350 sentencing factors, for others.

12

offense for each scheduled substance would have destroyed the utility of the schedules for Congress's purposes.

        4.     *The Legislative History of the CSA of 1970 Shows No Non-Recidivism Sentencing Factors Were Intended in § 841*

The legislative history of the CSA of 1970 reveals that no non-recidivist sentencing factors were intended in § 841. Congress expressed no intent in 1970 to make drug type a sentencing factor rather than an element. (Amount was statutorily irrelevant in the original CSA.) The legislative history discusses "penalties" corresponding to "violations," which is unremarkable in the context of a discussion of a penal statute. H.Rep. No. 91-1444, 91st Cong. 2d Sess. (1970), [1970] U.S. Code Cong. & Admin. News, at 4567, 4570, 4571, 4574, 4575-79, 4614, 4618. No inference that the report meant "sentence-enhancing fact" or "sentencing factor" when it said "penalty" can be drawn. In fact, the report subsection entitled "Criminal Penalties," *id.* at 4575, leads with a discussion of the new continuing criminal enterprise offense, which Congress clearly intended to be a separate offense. *See Garrett v. United States*, 471 U.S. 773, 783-84 (1980); *cf. Jones*, 526 U.S. at 237-38 (finding "unimpressive" the Government's equating of "penalty enhancement" with "sentencing factor"); *Castillo*, 530 U.S. at 128-30 (similar).

The legislative history of the 1970 Act referring to "sentencing procedures" giving "maximum flexibility to judges," *United States. v. Goodine* 326 F.3d 26 at 30, is misplaced. "Flexibility" did not refer to sentencing factors, but rather to the elimination, in 1970, of almost all mandatory minimum sentencing provisions from the federal drug laws. H.R. Conf. Rep. 91-1444 1970, *reprinted in*, 1970 U.S.C.C.A.N. 4566, 4576.

13

Congress recognized that the mandatory minimum sentences contained in the pre-CSA statutes created problems. *Id.* Judges were unable to craft sentences accounting for the circumstances of the individual defendants. *Id.* Prosecutors were reluctant to prosecute violations because they viewed the penalties as disproportionate. *Id.* Mandatory penalties made convictions harder to obtain. *Id.* In response to these problems, Congress did not create a sentencing factor regime. Rather, it made "the penalty structure in the law more flexible" to eliminate the "difficulties . . . arising out of minimum mandatory sentences." *Id.* The express sentencing factors Congress debated in 1970 were addressed in the legislative history quite apart from its discussion of judicial flexibility in sentencing[6].

The absence of any intent to make operative facts (aside from prior convictions) into sentencing factors under § 841 is shown by the debates over sections 408 and 409 of the CSA, 21 U.S.C. § 848 (continuing criminal enterprise) and 21 U.S.C. § 849 (1970)

---

[6]The House Report states:

> The foregoing sentencing procedures give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case.
>
> The severity of existing penalties, involving in many instances minimum mandatory sentences, have led in many instances to reluctance on the part of prosecutors to prosecute some violations, where the penalties seem to be out of line with the seriousness of the offense. In addition, severe penalties, which do not take into account individual circumstances, and which treat casual violators as severely as they treat hardened criminals, tend to make convictions somewhat more difficult to obtain. The committee feels, therefore, that making the penalty structure in the law more flexible can actually serve to have more of a deterrent effect than existing penalties, through eliminating some of the difficulties prosecutors and courts have had in the past arising out of minimum mandatory penalties.

*Id.*

[repealed] (dangerous special drug offender sentencing).  Due to constitutional objections foreshadowing *Apprendi*, the proposed new continuing criminal enterprise provision was explicitly changed from a sentencing factor provision into an offense. H. Rep. No. 91-1444, [1970] U.S. Code Cong. & Admin. News, at 4651 (additional views).  On the other hand, when the CSA came to the House floor, the special dangerous drug offender sentencing provision was introduced, vigorously debated (again along lines foreshadowing *Apprendi*) and ultimately added to the CSA.  CSA § 409; 116 Cong. Rec. 33633 (1970); 116 Cong. Rec. 33633-34 (1970); 116 Cong. Rec. 33661 (1970).  Yet, even the author of the sentencing provision agreed that the traditional right to trial by jury attached to violations of the CSA predicate to the special sentencing provisions.  *Id.* at 33634.  Under the former § 849, predicate violations included § 841 offenses.  The absence of similar debate on § 841 confirms that Congress did not intend to change pre-CSA practice and re-designate drug type as a sentence-enhancing fact.

     5. *The Legislative History Shows that Drug Amount is an Element*

  The legislative history of post-1970 amendments shows that threshold drug amount is an element. In the *Infant Formula Act of 1980*, Pub. L. 96-359, § 8(c)(2), Sept. 29, 1980, 94 Stat. 1260, Congress first added a threshold drug amount (at least 1000 pounds of marijuana) as an element in the former § 841(b)(6), using offense-creating language similar to that later contained in subparagraphs (1)(A) and (B).  Both the House and Senate Reports state, "[i]ndividuals *convicted* of trafficking in over 1,000 pounds would be subject to a maximum 15 year prison sentence and/or a maximum $125,000 fine." H. Rep. 96-936, 96th Cong. 2d Sess. 13 (1980); S. Rep. 96-916, 96th Cong. 2d Sess. 14 (1980) (emphasis added). Congress used the word "convicted" advisedly and

15

because it intended amount to be an element of the offense. *See Vazquez*, 271 F.3d at 109 (Becker, Ch.J., concurring in judgment).

In 1984, Congress adopted the former § 841(b)(1)(A). Both the Justice Department, which drafted the provision, *see* H. Doc. 98-32, 98th Cong. 1st Sess., and the Senate Report note that, except for marijuana, the prior law did not account for the important factor of drug amount. Thus, Congress created "a new subparagraph (A) under § 841(b)(1) that would provide, for *offenses* involving large amounts of particularly dangerous drugs, higher penalties than those now provided under section 841." S. Rep. 98-225, 98th Cong., 1st Sess. 258 (1983)(emphasis added). "The use of the plural 'offenses' indicates Congress's intention to create within a single statute a multitude of separate crimes depending on drug type and quantity." *Vazquez*, 271 F.3d at 110 (Becker, Ch.J.); *cf. Promise*, 255 F.3d at 175 (Luttig, J., concurring in judgment).

In 1986, Congress, using the internal structure of subparagraph (b)(1)(A) of the 1984 amendments, created new subparagraphs (b)(1)(A) and (B) and reintroduced mandatory minimum sentences for offenses under those subparagraphs. Again, the legislative history contains no discussion referencing sentence-enhancing facts. The Government was involved in the hearings, and assured Congress that prosecutors could present evidence of drug amount passing the sufficiency-of-the-evidence test (which applies to convictions, not sentencing), by introducing into evidence testimony about large drug transactions, rather than drugs themselves in the threshold quantities. H. Rep. 99-845, Part 1, 99th Cong., 2d Sess., at 12 (1986); *accord Vazquez*, 271 F.3d at 110 (Becker, Ch.J.). Thus, the government and Congress understood that proof of threshold

16

amounts of drugs was necessary for convictions; were drug amounts mere sentencing factors, they of course would not be discussed in the context of the guilt phase of trial.

Relying on an out-of-context snippet of the 1970 legislative history, the First Circuit suggested that Congress, in 1986, reintroduced mandatory minimum sentences, predicated upon judicially determined sentencing factors, to give "maximum flexibility to judges." *United States. v. Goodine* 326 F.3d 26 at 30. The legislative history of the 1986 amendments, however, reflects that the mandatory minimum sentences were created to restrict, not enhance, judicial discretion. The mandatory minimum provisions were a product of congressional hostility to the exercise of judicial discretion in sentencing drug offenders. Senate Majority Leader Byrd explained how the mandatory minimum sentences attaching to amount-based offenses would preclude judges from exercising sentencing discretion in favor of convicted drug offenders:

> [A major drug dealer] must know that no matter how good a lawyer he gets, ... that lawyer will not be able to get him out of jail *once he has been found guilty in a court of law*.
> \*\*\*
> [The amendments] will require that for *certain crimes involving drugs*, the *convicted defendant*, must -- I repeat must -- be sentenced to the penitentiary. ... It will not be a matter of discretion for these *types of crimes*. It will be a requirement imposed by law on the sentencing judge.
> 132 Cong. Rec. S14301 (daily ed. Sept. 30, 1986).

S*ee also* H. Rep. 99-845, Part 1, 99th Cong., 2d Sess., at 19 ("A person *convicted under those subparagraphs* [(b)(1)(A) & (B)] shall not be eligible for parole until the individual has served the minimum sentences required by such subparagraphs") (emphasis added).

The reference to "convictions" under subparagraphs (b)(1)(A) and (b)(1)(B) demonstrates that the predicate facts of drug type and quantity were deemed elements by

17

Congress. It would be decidedly odd for Congress to constrain judicial discretion by assigning fact-finding to the very judges sought to be constrained.

Although the Supreme Court decided *McMillan* four months before Congress passed the 1986 amendments to § 841, nothing in the text or legislative history indicates that Congress defined drug type and amount in § 841 in reliance upon *McMillan*. *Cf. Apprendi*, 530 U.S. at 487 n.13; *see also id.* at 564 (Breyer, J., dissenting) (citing § 841(b) as an example of possible legislative reliance on *McMillan*). Rather, the language, structure and legislative history of § 841 is consistent with the long-standing tradition of treating type and amount facts as offense elements for jury determination. *See* M.D. Knoll & Richard G. Singer, "Searching for the 'Tail of the Dog': Finding 'Elements' of Crimes in the Wake of *McMillan v. Pennsylvania*," 22 Seattle Univ. L.Rev. 1057 (1999). Moreover, in 1988 -- after many circuits had begun reversing course and describing § 841(b) as containing only *McMillan*-esque "sentencing factors" -- Congress amended § 841(b)(1)(A) (in the third complete sentence) to contain an internal reference to "a violation of this subparagraph," thus confirming in the text of § 841(b) itself that the offense, and not merely "sentencing factors," are found therein.

The Justice Department understood that Congress created drug type and amount as offense elements. Immediately following the 1986 amendments, the Department of Justice published its understanding of the amendments. *Handbook on the Anti-Drug Abuse Act of 1986*, at 1-9, 13-17, 20-21 (March 1987). The *1986 Handbook* repeatedly refers to *convictions* under the subparagraphs of § 841(b)(1). *Id.* at 3-4, 6-7. The Department referred to "a 'lesser included offense' in which the quantity of the controlled substance in question is not specified ...." *1986 Handbook*, at 8-9. The Handbook also

"recommends" that to invoke penalties "based upon the *kind* and *quantity* of drug involved in particular offenses," prosecutors should allege and prove at trial drug type and amount. *Id.* at 20 (emphasis in original). The *1986 Handbook* properly distinguished *McMillan* as relating to a mandatory minimum provision *expressly* to be determined at sentencing. *Handbook* at 21. The government's understanding as demonstrated in the *1986 Handbook* is further persuasive evidence of Congress' determination to identify drug type and amount in § 841(b)(1) as offense elements. *Vazquez*, 271 F.3d at 110-11 (Becker, Ch J., concurring).

Contrary to its fundamentally sound analysis of drug type and amount as § 841 offense elements in the *1986 Handbook*, the Department of Justice later seized on the early post-*McMillan* sentence-enhancing fact cases, and adopted and enforced a national policy to avoid juries and lower its burden of proof in drug cases.[7] Thus, before the Supreme Court adopted the painstaking statutory inquiry of *Almendarez-Torres*, the government secured an erroneous unanimity throughout the courts of appeal, contrary to Congress' intent to create drug type and amount as all-purpose offense elements.

**Conclusion**

It is clear that quantity is an element of the offense. Here, the government failed to plead and prove an essential element of the offense necessitating a Judgment of

---

[7] *See United States v. Coy*, 19 F.3d 629 (11th Cir. 1994) (cross-appeal) *United States v. McCann*, 940 F.2d 1352 (10th Cir. 1991) (cross-appeal); *United States v. Moreno*, 899 F.2d 465 (6th Cir. 1990) (cross-appeal); *United States v. Jenkins*, 866 F.2d 331 (10th Cir. 1989) (mandamus); 18 U.S.C. § 3742(b) (prosecution of criminal appeals requires personal approval of the Attorney General, the Solicitor General, or the Solicitor General's designee); *United States Attorney's Manual* § 9-2.170(A)(1 & 3) (appeals and mandamus requires DOJ level approval).

Acquittal After the Discharge of the Jury pursuant to the Fed. R.Crim.P. 29(c)(2).

*Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).

Respectfully submitted,
ROSEMARY CURRAN SCAPICCHIO
By his attorney,


/S/
Rosemary Curran Scapicchio
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
(617) 263-7400
BBO # 558312



Marcie Vaughan
Law Student
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114


Dated October 17, 2005