UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 04-10372-WGY |
| 3.  **GEORGE KANDIRAKIS** | ) |
| | ) |
| **Defendant.** | ) |

**GOVERNMENT'S MEMORANDUM REGARDING DRUG WEIGHT**

At the verdict phase of this jury trial, the Court addressed whether it would submit drug weight to the jury. The government requested an instruction which would have guided the jury through this process, starting with the highest drug weight and proceeding downward, to a point where the jury could agree. [Docket at 36]. The Court declined to give the proffered instruction.

The Court submitted the issue of drug weight to the jury, asking the jury to find drug weight beyond a reasonable doubt. [Jury Instructions, September 26, 2005 ("JI"), at page 15.] The Court instructed the jury that such a finding "has to be unanimous." Additionally, if the jury did not agree on a specific number of pills, it could check a range in a box, but in that case, the jury was to make only a single check mark: "Only make one check. Check that you agree." [JI at 20.] The Court further instructed the jury "Either fill in an amount or a category, but only one. Don't check a number of them." Finally,

the Court noted that if the jury "cannot agree" on quantity, that item could be left blank, despite a guilty verdict, and it would be an appropriate verdict to return.

## ARGUMENT

### A. No conclusion can be drawn from the jury's failure to agree on a drug weight.

The jury's failure to determine a drug weight in this case has no advisory use, because the result is insolvably ambiguous and because they were asked to find the weight by a standard that does not apply to drug weights at sentencing.

Under the instructions given to the jury, the fact that they were unable to unanimously agree on a single number is not informative of the individual conclusions of the jurors. Some jurors may have concluded that defendant should be held accountable only for what he directly sold, and argued for checking the box that included 300 pills. Other jurors may have been convinced by the questioning of the cooperating witness on cross-examination, when he agreed that he may have purchased as many as five thousand pills over the course of the conspiracy. Under such circumstances, the jury would not be unanimous as to either the number of pills or a range: under the Court's instructions, they would have left the box blank. See Zafiro v. United States, 506 U.S. 534, 540-41 (1993).

A jury's verdict may be informative at setting the floor for a reasonable judicial conclusion regarding drug weight. Here,

however, the jury would have only found a weight if it was unanimous on a single range beyond a reasonable doubt. Therefore, its lack of accord is of no moment.  See United States v. Yeje-Cabrera, 430 F.3d 1, 23 (1st Cir. 2005).

**B.  Drug Weight is determined by the Judge by a preponderance of the evidence.**

Under First Circuit law, the judge determines sentencing factors by a preponderance of the evidence standard.  United States v. O'Brien, 04-2447 (1st Cir. Jan. 18, 2006) (slip opinion at 11) ("only a preponderance is required"; "it remains (as before Booker) for the judge to determine the factual basis for an enhancement.  United States v. Yeje-Cabrera, 430 F.3d 1, 12-13, 16-17, 23 (1st Cir. 2005) (the judge determines drug weight by a preponderance of the evidence standard).

In this case, the Court has already been asked to make certain determinations by a preponderance of the evidence standard.  A substantial amount of the evidence against the defendant was introduced as statements in furtherance of a conspiracy during the course of a conspiracy, pursuant to Federal Rule of Evidence 801(d)(2)(E).  Under United States v. Petroziello, 548 F.2d 20, 22-23 (1st Cir. 1977), the Court must make the determination "that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, during

the course of the conspiracy" by a preponderance of the evidence. With regard to the proposed submission to the jury of weight ranges, there was a discussion of pill quantities between 1,866 and 5,597 pills.  Trial Transcript, September 23, 2005, at 29-30. The Court noted:

> The only way they can get up to numbers that high is to credit Adelman about his frequency of Oxycontin purchases from Arco in the period, in the period charged in the indictment but prior to the controlled buys, and then they add in the controlled buys because they say, and <u>I'm persuaded by a fair preponderance, that Kandirakis was still in on it then</u>.

Trial Transcript, September 23, 2005, at 29-30.

Therefore, the government submits that the remaining issue to be decided by the trial Court, is simply what portion of the drugs that the Court has already found were within the conspiracy while Kandirakis was still a member were reasonably foreseeable to Kandirakis pursuant to U.S.S.G. § 1B1.3.  As noted in its previous arguments and submissions, the government asserts that the Court should find that all the purchases which took place were in fact reasonably foreseeable to Kandirakis, because he intended to set in motion a regular course of dealing.  He can be expected, therefore, to have foreseen that Adelman and Arco would have met multiple times per month for transactions of 100 or more pills, as the testimony indicated.  While the evidence showed that after this became foreseeable to Kandirakis, his co-conspirators occasionally lied to him about what they were doing

4

in order to cut him out of his share of the money, that does not change the foreseeability analysis.  The evidence shows that he had anticipated multiple deals which would occur without his presence, and those deals did in fact occur.  Additionally, the evidence shows, through Kandirakis' statements in the consensually recorded telephone calls, that Kandirakis in fact knew that purchases were being made without providing him with his share, and yet he had not withdrawn from the conspiracy.  Therefore, not only did Kandirakis foresee these sales at the time that he entered the agreement, he knew that they had occurred despite the fact that he had not received his cut.

Accordingly, the government submits that its proposed calculation of 3600 pills (300 historical pills between Adelman and Kandirakis, 2400 historical pills between Arco and Adelman, and 900 pills agreed in the controlled purchases) is appropriate.

## Conclusion

The government respectfully submits that the jury finding regarding drug weight is of no moment, and the Court should find that the defendant is responsible for 3600 pills.

                                Respectfully Submitted,


                                MICHAEL J. SULLIVAN
                                United States Attorney

                           By:  /s/ Nancy Rue
                                NANCY RUE
                                Assistant U.S. Attorney