UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMEERICA | ) | |
| | ) | |
| v. | ) | NO. 04-10372-WGY |
| | ) | |
| GEORGE KANDIRAKIS | ) | |
| | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

**I. Introduction**

George Kandirakis respectfully submits this memorandum to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005). *Booker* restored this Courts' ability to fashion a sentence tailored to the individual circumstances of the case and defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, under Section 3553(a), courts are *required* to sentence *below* the range if such a sentence would be sufficient to achieve the purposes of punishment.

Kandirakis respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence. *First*, Kandirakis' conviction, as found by the jury, did not include a quantity determination and limits his Guideline sentence to that of an unquantified conspiracy with a sentencing range of 0-6 months. *Second*, Kandirakis' good character and unblemished personal history, as attested to by the more than 20 people who have written to the Court,

show that his criminal behavior in this case is truly aberrant and that he poses no risk of recidivism. *Third*, Kandirakis has already endured ruination: this felony conviction has not only resulted in incarceration, but has also cost him his livelihood as a mortgage broker, a trade he will never again be able to practice.

I      CONSTITUTIONAL CONSTRAINTS ON SENTENCING

   A.    <u>Kandirakis' Conviction, Absent Any Quantity Determination By The Jury, Limits His Guideline Sentence To That Of An Unquantified Conspiracy With A Sentencing Range Of 0-6 Months</u>

Kandirakis exercised his constitutional right to a jury trial on the sole count of the indictment: conspiracy to distribute oxycodone. This Court, over Kandirakis' objection, sent the issue of quantity to the jury. Kandirakis specifically objected to the issue of quantity being presented to the jury and argued that if the Court was inclined to send the issue of quantity to the jury, the jury's decision must be binding. The jury found Kandirakis guilty of the single count of conspiracy, but did not find any quantity despite the fact that they were instructed that they had the option of finding a quantity range, or an exact quantity based on the evidence.

The government suggests that this Court should now second guess the jury and hold Kandirakis, the only defendant to exercise his constitutional right to a jury trial, responsible for all of the oxycodone attributable to the entire conspiracy.

The Supreme Court in <u>Booker</u> held that sentencing facts must be charged and proved to a jury beyond a reasonable doubt. Notably, the Court in <u>Booker</u> avoided expressing its holding in terms of the "statutory maximum," referring

2

instead to the "maximum authorized by the facts," Booker, 125 S.Ct. at 752-53

(substantive majority opinion) (commenting that "[m]ore important than the

language used in our holding in Apprendi are the principles we sought to

vindicate").

In addition, the Supreme Court in Blakely v. Washington, 124 S. Ct. 2531,

2537 (2004) has already stated:

> Our precedents make clear, however, that the "statutory maximum"
> for *Apprendi* purposes is the maximum sentence a judge may
> impose *solely on the basis of the facts reflected in the jury verdict
> or admitted by the defendant.* See *Ring, supra*, at 602, 153 L. Ed.
> 2d 556, 122 S. Ct. 2428 ("'the maximum he would receive if
> punished according to the facts reflected in the jury verdict alone'"
> (quoting *Apprendi, supra*, at 483, 147 L. Ed. 2d 435, 120 S. Ct.
> 2348)); *Harris* v. *United States,* 536 U.S. 545, 563, 153 L. Ed. 2d
> 524, 122 S. Ct. 2406 (2002) (plurality opinion) (same); cf.
> *Apprendi, supra*, at 488, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (facts
> admitted by the defendant).  In other words, the relevant "statutory
> maximum" is not the maximum sentence a judge may impose after
> finding additional facts, but the maximum he may impose *without*
> any additional findings.

The Sixth Amendment constraints on sentencing remain, even under a

post-Booker advisory Guideline system.  *See, e.g.*, McMillan v. Pennsylvania,

477 U.S. 79, 87, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (due process will be

violated when the finding of a sentencing factor becomes "a tail which wags the

dog of the substantive offense"), *see also* Booker, 126 S.Ct. at 798 n. 6 (Thomas,

J., dissenting in part) (stating that the Court's holding in Booker corrects the

Sentencing Commission's mistaken belief, set out in U.S.S.G. § 6A1.3, p.s., that

the preponderance of evidence standard is appropriate to meet due process

requirements – "[t]he Fifth Amendment requires proof beyond a reasonable

doubt, not by a preponderance of the evidence, of any fact that increases the

sentence beyond what could have been lawfully imposed on the basis of facts found by a jury or admitted by defendant.").

B.   The Sentence Must Be Reasonable in Light of The Facts Established

As noted by the remedial majority in <u>Booker</u>, a district court's sentencing determination must be reasonable.  <u>Booker</u>, 125 S.Ct. at 797 (Breyer, J., for the Court) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing"); *id*. at 766 (noting that a court of appeals should review post-<u>Booker</u> sentences for "reasonableness").  Therefore, the upper limit of a lawful sentence is no longer the "maximum term of imprisonment" under a statute that sets out a generally broad range (i.e., the "statutory maximum"), but the highest point within that range that is "reasonable."  *See* <u>Booker</u>, 125 S.Ct. at 748-49, 754-56 (substantive majority opinion) (referring to upper limit as "maximum authorized by facts established" by guilty plea or jury verdict and stating that constitutional safeguards do not concern the ability of the legislature to define criminal conduct but involve only the required procedures for finding the facts that determine the maximum permissible punishment), 765 (remedial majority opinion) (outlining standard of appellate review), 797 (Thomas, J., dissenting) (referring to upper limit as "lawfully imposed sentence").  For example, it would be unreasonable to sentence an individual to the statutory maximum, under 21 U.S.C. § 841(b)(1)(C), of twenty years for a first-time offender who distributed a tiny amount, such as one gram, of a controlled substance.

C.   Due Process Mandates That This Court Adhere To The Factual Determinations Made By The Jury, Including As To Quantity

4

In order to comply with due process in determining a reasonable sentence, the court must ensure that the defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government may seek at sentencing to increase the defendant's sentence, including the right to a jury determination of drug weight. *See* Blakely v. Washington, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004) (noting that "when a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact-finding," i.e., waives his right to jury trial).

The defendant has a constitutional right under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment to this factual determination of drug weight as to him. See, Apprendi v. New Jersey, 530 U.S. 466, 476 (2000).    In addition, Kandirakis maintained prior to trial and still maintains that the government's failure to notify him of the quantity until after trial violates his rights pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. See, Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 124 S.Ct. 2531 (2004) United States v. Booker, 125 S. Ct. 738 (2005).

II.    THIS COURT SHOULD IMPOSE A SENTENCE THAT IS *SUFFICIENT, BUT NOT GREATER THAN NECESSARY* TO COMPLY WITH THE PURPOSES SET FORTH IN [18 U.S.C. § 3553(a)(2)]

George Kandirakis is a 25-year-old college graduate who was living and working in New York prior to this arrest. While in college, Kandirakis played football for Union College and was liked and respected as a committed athlete by

his teammates and coaches.  Since his graduation from Union College, Kandirakis

has maintained at least a one full time job and often times worked both his full

time job as a loan officer as well as a part time job as a bar tender.  Kandirakis

paid taxes and supported himself since his graduation from college.  Kandirakis

has a loving and supportive family.  He has no prior involvement in any criminal

activity.     This Court should consider a minor role adjustment for Kandirakis.

    A.    <u>Post-*Booker* Sentencing Considerations</u>

The Court is no doubt aware of the broad ramifications of *United States v.*

*Booker* for this proceeding. The sentencing guideline range is no longer binding

on the Court, but is only one of five factors to be considered in determining the

sentence. *Booker*, 125 S. Ct. at 764-65. The other four factors are (1) the nature

and circumstances of the offense and the history and characteristics of the

defendant; (2) the kinds of sentence available; (3) the need to avoid unwarranted

sentencing disparity; and (4) the need to provide restitution. *Id.*; 18 U.S.C. §

3553(a)(1), (a)(3), (a)(6)-(7).

In considering the Section 3553(a) factors, the sentencing guidelines are to

be given no more or less weight than any other factor. *See United States v. Jaber*,

362 F. Supp. 2d 365, 370- 76 (D. Mass. 2005) (providing comprehensive analysis

of why sentencing guidelines do not reflect statutory purposes of punishment);

*United States v. Ranum*, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005) (same).

Perhaps even more important, however, is that *Booker* establishes a new,

independent limit on the sentence that may be imposed. The primary sentencing

mandate of Section 3553(a) states that courts must impose the minimally-

6

sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation: The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]. 18 U.S.C. § 3553(a) (emphasis added).

This so-called "parsimony provision" is not simply a factor to be considered in determining sentence, it represents a cap above which the Court is *statutorily prohibited* from sentencing—even when a greater sentence is recommended by the sentencing guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

(1)    *History And Characteristics Of The Defendant*

Twenty-five people have taken it upon themselves to write to the Court to share their impressions of Kandirakis, hoping to give some insight into the person before the Court for sentencing. *See* Letters attached hereto as Exhibits A through Y. The sheer number of people who wish to be heard speaks volumes of George Kandirakis, but what is truly remarkable is the breadth and the depth of those who have stood up to be counted on behalf of Mr. Kandirakis. In addition to family and current friends, testimonials have also come from individuals who met Kandirakis years ago and, despite having fallen out of touch over the years, still want to be heard.

One theme reverberates throughout the letters: Kandirakis' lifelong habit of helping others in times of need and personal crisis. This defining characteristic emerged early and has followed Kandirakis throughout his life.

(2)    *The Kinds of Sentences Available*

In this case, unless there is an express provision of the USSG addressing the drug

in question in 841(b)(1)(C),(D), (b)(2) or (b)(3), to determine the drug's schedule

in the regulations promulgated under 21 U.S.C. sec, 812.  The sentence allowed

by the provision is the so-called "default statutory maximum" in misguided

Apprendi parlance, actually, it is the sentence for the least punished offense in the

hierarchy of the distinct congressionally defined quantity based offense in 841.

As no quantity is alleged in the charging language of the conspiracy, the statutory

maximum is the maximum for the least punished offense under the language of

846 (See <u>Joplin Merchandise Co. v. United States</u>, 236 U.S. 531 (1915)).

        After *Booker*, however, the sentencing guidelines are not binding and

courts have discretion to impose split sentences, or sentences of probation, even

when the defendant falls within Zone D of the sentencing table. Many courts have

done precisely this. *See, e.g.*, *United States v. Jones*, 352 F. Supp. 2d 22, 25 (D.

Maine 2005) (varying from guidelines to impose sentence of home detention

despite fact that departure under sentencing guidelines not warranted); *United

States v. Kelley*, 355 F. Supp. 2d 1031 (D. Neb. 2005) (sentence of home

detention); *United States v. Niemoeller*, No. 02-09-CR-1, 2005 WL 1799456

(S.D. Ind. July 15, 2005) (same); *United States v. Anderson*, 365 F. Supp. 2d 67

(D. Maine 2005) (split sentence).

        (3)    *The Need to Avoid Unwarnted Disparity in Sentencing*

        The offense in this case is serious.  Assuming, but not conceding that this

Court should consider the suggested Guideline sentence calculated by probation,

Kandirakis is a category I, level 26 with a sentencing range of 63-78 months. Jonah Adleman has not been sentenced but the Government has limited his exposure to less than five years under the Guidelines. Jess Siciliano has pled guilty and signed a plea agreement that, if accepted by this Court, puts him at a lower sentencing range then Kandirakis. In Siciliano's case, the government agreed to hold Siciliano responsible for less oxycodone that they have asked the Court to hold Kandirakis responsible for even though the Government represented to this Court that Kandirakis was eligible for a minor role adjustment, if he pled guilty to this offense.

Arco pled guilty to this offense. Arco signed a plea agreement with the government, which, if accepted, will hold him responsible for less oxycodone than what the government has suggested Kandirakis' should be held responsible for even though the government identified Arco as the leader in the incitement. Arco is also at a lower sentencing range than Kandirakis.

Considering the sentences the co-defendants, and as well as the measures the government has undertaken to limit Adleman's sentence exposure, there is no question that the government's recommendation at least on its face, appears to be punishing Kandirakis for decision to exercise his constitutional right to a jury trial. In addition, the advisory Guideline sentencing range for Kandirakis, as a minor player in this conspiracy, exceed the range of both Arco and Siciliano whom the government admits were more culpable than Kandirakis.

The pre-sentence investigation report determines Kandirakis' sentencing

guidelines range as 63-78 months' imprisonment based on an offense level of 26 and a criminal history category of I (0 points). PSR at ¶¶ 64,71. However, the advisory guidelines sentence to be considered by the Court is whatever sentence is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S. C. sec. 3553(a) in light of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).

III.   GROUNDS FOR DEPARTURE

    A.   <u>No Quantity</u>

    Kandirakis is entitled to departure where the jury found no quantity beyond a reasonable doubt. In <u>U.S. v. Gray</u>, 362 F.Supp. 2d 714 (SDWVa 2005) the court suggested that if the guideline calculated by <u>preponderance standard</u> was *greater* than that calculated <u>beyond a reasonable doubt</u> standard, court's confidence in correctness of the advisory guideline is effectively undermined, and the sentence should be lowered accordingly. CF <u>U.S. v. Malouf,</u> 377 Fsupp2d 315 (D.Mass 2005)(After <u>Apprendi</u> and <u>Booker</u>, Sixth Amendment requires drug quantity top be proved beyond a reasonable doubt; alternatively required by Due Process clause of the Fifth Amendment – same is true when mandatory minimum is alleged – here evidence was insufficient to establish, beyond reasonable doubt, that participant in cocaine distribution conspiracy was responsible for 500 grams needed to subject him to mandatory minimum sentence.). See also <u>U.S. v. Leroy</u>, 373 F.Supp.2d 887 (ED Wisc 2005) at n. 2. [1]

---

[1] A sentence of 70 months, rather than the United States Sentencing Guidelines of 100 to 125 months, was sufficient, but not greater than necessary, to serve purposes of sentencing. "Despite the applicability of a preponderance standard to guideline to guideline determinations, judges should still require a high degree of confidence in any

B.    Overstated Culpability

Kandirakis is entitled to departure where the amount of drugs distributed overstates his culpability. The guidelines do not consider the relationship between the length of the distribution period and the quantity distributed, and in U.S. v. Genao, 831 F. Supp 246 (SDNY 1993) the court departed downward where total quantity was distributed over a substantial period time. Aff'd in part, U.S. v. Lara, 47 F3d 60, 66 (2nd Cir 1995)(same at least for offense levels over 36).

C.    Peripheral Involvement

Kandirakis is entitled to departure where he had only peripheral involvement. In US v. Jaber ,362 F. Supp 365 (D.Mass. 2005), a conspiracy to distribute methamphetamines, the court departed downward from 57 months to probation in part because "The two level minor role adjustment does not begin to reflect his position in this enterprise – an employee, on a salary, taking directions from Jaber. Moreover, if the drug quantity did not adequately reflect [the co-defendant's] culpability, it surely does not reflect Memo's." The Eastern District of New York similarly departed in U.S. v. Koczuk, 166 F Supp 2d 757 (EDNY 2001). There, the defendant was acquitted of five counts but convicted of single count of importing caviar with market value of less than $100,000. Id. Yet because his codefendant was convicted of six counts of importing $11 million

---

finding that increases the sentence. As Judge Goodwin noted in United States v. Gray, in determining what weight to give the advisory guideline, it may be helpful for the court to consider whether any guideline enhancements are supported by evidence beyond a reasonable doubt. This is not a back door means of adopting the means of the remedial dissenters in Booker. Rather, it allows the court to give effect to both the merits and remedial majority opinions – federal sentencing is still judge base, but courts should not impose sentences based on the sort of flimsy evidence that often passed under the old regime. U.S. v. Leroy, 373 F.Supp.2d 887 (ED Wisc 2005) at n.2.

worth of caviar,  the defendant's offense level "*has been extraordinarily magnified by a circumstance that bears little relation to the defendant's role in the offense*" U.S. v. Koczuk, 166 F Supp 2d 757.   That court ultimately found that the defendant's role in the conspiracy bore little correlation to $11 million because defendant was not actively involved in codefendant's business, was merely a low-level employee, chauffer and interpreter, who took orders from the co-defendant, and a 4 level minimum role reduction simply was not adequate.  Id.  See also U.S. v. Bruder, 103 F.Supp 2d 155, 181 (EDNY 2000)(where police officer assisted another in sexual assault of prisoner (Louima), two level departure granted in addition to two level adjustment for minor role because adjustment inadequate to show peripheral role).

     D.    <u>Offense Level</u>

Kandirakis is entitled to departure where the government controls the offense level by determining kind and quantity.   Prior to trial, the government informed this Court that if the case resolved by way of a plea, Kandirakis was eligible for a minor role adjustment.   Now the government takes the exact opposite position and suggests that Kandirakis be held responsible for more weight that both Arco and Siciliano combined.  In U.S. v. Williams, 372 F Supp2d 1335 (MD Fla. 2005)(Presnell, J.), the court imposed a sentenced of 204 months, rather than the guideline, which called for 30 to life because:

> …the government essentially controls the offense level, by reasons
> of its undercover purchasing decision [because the government
> could have bought powder not crack, and also because] the
> layering of Chapter 4 enhancements results in a double-
> compounding effect, increasing Williams' minimum guidelines
> sentence to 360 month in light of the same criminal conduct.  This

> sort of arbitrary compounding results in a guideline sentence much
> greater than that necessary to comply with the statutory purpose.
> U.S. v. Williams, 372 F Supp2d 1335 (MD Fla. 2005)(Presnell, J.)

The court also notes that government always opposes any sentence outside of the guideline as unreasonable: " Thus, while paying lip service to Booker and the statute, the government flouts the efficacy of the Supreme Court's opinion." Id. In addition, the court states that "government itself shows not respect for the law when it consistently advocates a policy which ignores a specific pronouncement of our nation's highest court.  The crux of the government's position appears to be an effort to completely usurp the Court's sentencing function…the executive wants to be prosecutor and judge…rather than promoting respect for the law, a guideline sentence would have the opposite effect." U.S. v. Williams, 372 F Supp2d 1335 (MD Fla. 2005)(Presnell, J.).

 U.S. v. Williams, 372 F Supp2d 1335 (MD Fla. 2005)(Presnell, J.)

E.    Aberrant Behavior

Kandirakis is entitled to departure because this crime constituted aberrant behavior.  Pursuant to USSG s. 5K2.20, effective Nov. 1, 2000, a departure for aberrant conduct is authorized but only for "a single criminal occurrence or single criminal transaction that was committed without significant planning, was of limited duration, and represented a marked deviation from an otherwise law abiding life." 5K2.20 App. Note 1.  Further, this departure is unavailable if (1) offense involved serious bodily injury or death, (2) *use* or discharge of a firearm, (3) a serious drug trafficking crime, or (4) the defendant has more than one criminal history point.  Under this standard, "The Sentencing Commission

13

specifically rejected a rule that would have allowed a departure for aberrant behavior only in a case involving a single act that was spontaneous and seemingly thoughtless…The Commission saw the need to define aberrant behavior more flexibly and to slightly relax the single act "rule." <u>U.S. v. Gonzalez</u>, 281 F.3d 38 (2nd Cir. 2002).

Accordingly, in <u>U.S. v. Smith</u>, 387 F.3d 826 (9th Cir. 2004), where the defendant was convicted of retaliating against a witness, the case was remanded to the district court to reconsider its refusal to grand aberrant behavior departure, noting that, "the fact that the defendant may have had time to plan the offense does not mean it was the result of "significant planning," and that crime lasted for ten minutes does not mean it lasted a long time; and that the conduct was indeed extraordinary.  *See also* <u>U.S. v. Iaconetti</u>, 59 F.Supp.2d 139 (D.Mass.1999) (Defendant, who had no prior criminal record and who pled guilty to the charge of conspiracy to possess with intent to distribute cocaine, was entitled to eleven-level departure from Sentencing Guidelines (from level 25 to level 14) based on "single acts of aberrant behavior"--gambling debts to a loan shark's idea as to how to extinguish the debts after defendant had tried to pay the debts from his personal resources, his business, and his family).

*See also* <u>U.S. v. Vieke</u>, 348 F.3d 811 (9th Cir. 2003)[2]  <u>See U.S. v. Working</u>, 224 F.3d 1093 (9th Cir. 2000) (<u>en banc</u>) [3]; <u>U.S. v. Lam</u>, 20 F.3d 999,

---

[2] Because government made only pro forma objection, court of appeals refuses to review district court's four level downward departure to probation in credit card fraud case where district court said crime committed because of "pathological nature of the [gambling] addiction" and was "totally out of suit with the rest of her life and the behaviors" even though fraud went on for years. <u>U.S. v. Vieke</u>, 348 F.3d 811 (9th Cir. 2003).

1003-05 (9th Cir. 1994)[4]; <u>U.S. v. Takai</u>, 941 F.2d 738, 744 (9th Cir. 1991)[5] ; <u>U.S.</u>

<u>v. Dickey</u>, 924 F.2d 836 (9th Cir. 1991)[6]; <u>U.S. v. Garcia</u>, 182 F.3d 492 (10th Cir.

1998)[7].  See also, *District Court:* <u>U.S. v. Myers</u>, 353 F.Supp.2d 1026 (S.D. Iowa

2005)[8]; <u>U.S. v. Hued</u>, 338 F.Supp.2d 453 (S.D.N.Y. 2004)[9]; <u>U.S. v. Booe</u>, 252 F.

Supp. 2d 584 (E.D. Tenn. 2003)[10]; <u>U.S. v. Hancock</u>, 95 F.Supp.2d 280 (E.D.Pa.

---

[3] Where woman convicted of attempted murder of husband and use of firearm, when he threatened divorce and taking children, district court may properly depart 21 levels for aberrant conduct even though crime well-planned and relentlessly executed, but remanded for court to give reasons for extent (from range of 87 to 108 months to one day), but on appeal after remand, departure vacated because unreasonably great and based on impermissible factors. <u>See U.S. v. Working</u>, 224 F.3d 1093 (9th Cir. 2000) (<u>en banc).</u>

[4] Where law-abiding immigrant obtained sawed-of shotgun to protect his family against predators after he and pregnant sister were robbed by three gunman, where defendant not aware that he possessed illegal weapon, and where only prior driving without a license, court had discretion to downward depart from 18 month sentence because of aberrant conduct-not court rejects view that aberrant conduct must be single incident; and rejects view that must be first offense[4]; <u>U.S. v. Lam</u>, 20 F.3d 999, 1003-05 (9th Cir. 1994).

[5] Multiple incidents over six-week period in effort to obtain green cards by bribing INS official still constituted a single act of aberrant behavior where defendant's crime did not lead to pecuniary gain, government agent influenced defendant to commit crime, and one defendant committed charitable acts-outstanding good deeds <u>U.S. v. Takai</u>, 941 F.2d 738, 744 (9th Cir. 1991).

[6] Crime may be aberrant where defendant stole $80,000, which he received by bank error <u>US v. Dickey</u>, 924 F.2d 836 (9th Cir. 1991).

[7] Where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels to probation when, as one of eleven factors, it considered that crime was aberrant conduct where the defendant had been law abiding until age 35 when h is marriage disintegrated .<u>US. v. Garcia</u>, 182 F.3d 492 (10th Cir. 1998).

[8] Where defendant 40 years of age with no record and lead blameless life convicted of unlawful possession of a short-barreled shotgun he sold to his cousin four years earlier, and where advisory guideline 20-30 months, departure to time served and three month term of supervised release because of aberrant conduct and because other purposes of sentencing satisfied <u>U.S. v. Myers</u>, 353 F.Supp.2d 1026 (S.D. Iowa 2005).

[9] Where defendant pled guilty to making maintaining a place to store heroin with range of 41 to 51 months, downward departure of 11 levels granted under 5K2.20(c) for aberrant conduct because she "was never actively involved in the planning of the criminal conduct" and her conduct was of "limited duration" and "a marked deviation from an otherwise law-abiding life." <u>U.S. v. Hued</u>, 338 F.Supp.2d 453 (S.D.N.Y. 2004).

[10] Defendant who robbed bank with note granted 9 level downward departure for aberrant conduct because she was a 22 year old black single mother of a one year old son, had

2000);); U.S. v. Martinez-Villegas, 993 F.Supp. 766 (C.D. Cal. 1998)[11]; U.S. v.

Delvalle, 967 F. Supp. 781 (E.D. N.Y. 1997)[12]); U.S. v. Baker, 804 F.Supp.19, 21

(N.D.Cal. 1992)[13] U.S. v. McCarthy, 840 F. Supp. 1404 (D. Colo. 1993)[14].

     F.    Employment History

     Kandirakis is entitled to departure because of his excellent Employment

History.  In U.S. v. Thompson, 74 F.Supp.2d 69 (D.Mass. 1999), also a drug case,

this Court set out framework for determining when employment history and

family ties warrant downward departure as extraordinary.  In Thompson, the

Court departed from 87 to 60 months, stating, "not only did defendant exhibit a

sustained commitment to his family dating back to the instant he became a father,

he consistently worked to provide for them"), reversed 234 F.3d 74 (1st Cir. 2000)

(district court erred in limiting its inquiry to cases involving crack cocaine dealers

and then asking whether defendant's record stood apart from the rest); U.S. v.

Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of

a firearm by a prohibited person, the district court did not abuse its discretion in

departing downward by three levels when, as one of eleven factors, it considered

---

severe depression, no criminal record and felt guilt over child's well being--little
planning and no violence U.S. v. Booe, 252 F. Supp. 2d 584 (E.D. Tenn. 2003)
[11] In drug case downward departure of one level granted because of aberrant conduct
where government offered much money to defendant with no criminal record to perform
single act of transporting drugs.  U.S. v. Martinez-Villegas, 993 F.Supp. 766 (C.D. Cal.
1998).
[12] Defendant's involvement in drug conspiracy on two different days, separated by a
week, were so loosely related they could be seen as single act of aberrant conduct
warranting twelve-level departure.  U.S. v. Delvalle, 967 F. Supp. 781 (E.D. N.Y. 1997).
[13] Where defendant pled guilty to possession of one kilogram of crack downward
departure to minimum mandatory sentence proper where act was "single act of aberrant
behavior"); U.S. v. Baker, 804 F.Supp.19, 21 (N.D.Cal. 1992).
[14] Aberrant behavior departure to probation proper for armed bank robber who was
disorganized and unsophisticated where he was also facing 5 year mandatory minimum
for possession of gun U.S. v. McCarthy, 840 F. Supp. 1404 (D. Colo. 1993).

the defendant's "long impressive work history…where good jobs are scarce."  See also U.S. v. Higgins, 967 F.2d 841 (3d Cir. 1992) (young age and stable employment will justify a downward departure if "extraordinary"; remanded to see if judge realized he had power).  See also U.S. v. Alba, 933 F2d 1117 (2d Cir. 1991) (long-standing employment at two jobs); U.S. v. Jagmohan, 909 F.2d 61 (2d Cir. 1990) (exceptional employment history and nature of the crime); U.S. v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record); U.S. v. Shoupe, 988 F.2d 440 (3d Cir. 1993) (age and immaturity considered in whether criminal history overstates propensity); U.S. v. Ragan, 952 F.2d 1049 (8th Cir. 1992) (defendant stopped using drugs and year before his indictment, maintained steady employment, and offered to cooperate-departure affirmed where government did not object at sentencing).

      G.      Prosecutorial Manipulation, Even In Good Faith

Kandirakis is entitled to departure where the prosecutor's manipulated the charges, even absent bad faith.  Under U.S.S.G. Pt. A4, "a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power." See U.S. v. Gamez, 1 F.Supp. 2d 176 (EDNY 1998) (Weinstein, J.) (departure from level 20 to 15 warranted in money laundering case because nature of the crime more closely resembled structuring crime which had lower guidelines).. See also U.S. v. Lieberman, 971 F.2d 989, 995 (3rd Cir. 1992) [15]); see U.S. v. Deitz, 991 F.2d 443 (8th Ci8r. 1993)(Bright, J. Dissenting)[16].

---

[15] Where prosecution charged defendant with tax evasion and embezzlement, knowing not group able and other defendants not charged, court can depart downward to ensure equality in sentencing and that U.S. Attorney not manipulating sentencing even absent bad faith.  U.S. v. Lieberman, 971 F.2d 989, 995 (3rd Cir. 1992)

H.     Minimum Role

Kandirakis is entitled to a departure for his minimum role in the offense. See. U.S. v. Restrepo, 936 F2dd 661 (2nd. Cir. 1991) (based on minimal role in a money laundering offense- merely unloading boxes of money in a warehouse on one date - - defendant received both a four- level offense reduction and a four level downward departure).  See also U.S. v. Bierley, 922 F2d 1061 (3rd *Cir. 1990)*[17]; U.S. v. Speeenburgh, 990 F.2d 72, 75-76 (2nd. Cir 1993) [18].

I.     Kandirakis is entitled to departure where the Federal Bureau of Prisons refuses to honor judicial recommendation of CTC.

*See* U.S. v. Serpa, 251 F. Supp. 2d 988 (D. Mass. 2003))(where BOP no longer follows its long standing policy of honoring judicial recommendation to place defendants who fell within Zone C of the Sentencing Table in CTC for the imprisonment portions of their sentences, district court grants downward departure to defendant who pled guilty to three counts of filing false tax returns and whose guideline sentencing range was 10-16 months before BOP announced its police to avoid any hint of an ex post facto violation in his sentencing because the change not foreseeable).

J     Sentencing Entrapment

Kandirakis is entitled to a departure for sentencing entrapment. The U.S.S.G. section 2D1.1, comment (note 12, and 15) allows for departure where the

---

[16] Time to check enormous abuse and allow departure where federal government agrees to take over state prosecution after state judges dismiss charges for violation of state speedy trial act. U.S. v. Deitz, 991 F.2d 443 (8th Ci8r. 1993)(Bright, J. Dissenting
[17] minimum role departure available even where defendant sole actor in buying pornography from agent
[18] where D ineligible for minor role reduction because other participant is a government agent, downward departure proper).

government entrapped a defendant into committing this crime. See <u>U.S. v. Searcy</u>,

233 F.3d 1096, 1099 (8th Cir. 2000)[19] ; <u>U.S. v. Castaneda</u>, 94 F.3d 592 (9th cir.

1996)[20]; <u>U.S. v. Searcy</u>, 233 F.3d 1096, 1099 (8th cir. 200)[21]; <u>U.S. v. Montoya</u>, 62

F.3d 1, 3-4 (1st Cir.) (Same).

      K.    <u>Disparity in Sentencing</u>

      Kandirakis is entitled to departure where there is great disparity in

Sentencing between co-defendants. See <u>U.S. v. Tzoc-Sierra</u>, 387 F.3d 978 (9th

Cir. 2004) [22](); <u>U.S. v. Caperna</u>, 251 F.3d 827 (9th Cir. 2001)[23] ;<u>U.S. v. Daas</u>, 198

F.3d 1167 (9th cir. 1999)[24];  <u>U.S. v. Jaber</u>, 362 F.Supp. 2d 365 (D. Mass. 2005)[25].

---

[19] Remanded to see if defendant was entrapped for sentencing purposes- Application of Note 12 state in relevant part: "If, however, the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing, the agree-upon quantity of the controlled substance, the court shall exclude form the offense level determination of the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonable  capable of providing."

[20] District court erred in not considering whether to reduce amount of drugs attributed to the defendant because he was entrapped.

[21] Sentencing entrapment viable ground for departure – "This case demonstrates that the Sentencing Guidelines have a terrifying capacity for escalation of a defendant's sentence" as a result of government misconduct"

[22] in drug case affirmed district court's downward departure form range of 46-67 months to 36 months on basis of disparity of sentencing received by codefendants See <u>U.S. v. Tzoc-Sierra</u>, 387 F.3d 978 (9th Cir. 2004)

[23] <u>U.S. v. Caperna</u>, 251 F.3d 827 (9th Cir. 2001) (where defendant a small clog in a large drug conspiracy, district court's downward departure to 36 months because of disparity in sentencing of codefendant is vacated, but on remand district court has discretion to depart downward because of disparity in sentencing with other codefendants as long as codefendants convicted of same crime);

[24] <u>U.S. v. Daas</u>, 198 F.3d 1167 (9th cir. 1999)(defendant argued for departure based on disparity between his sentence and that of codefendant turned informants, but district court indicated that basis was improper to consider, 9th Circuit reversed holding "downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances . . .  Indeed, a central goal of the Sentencing Guidelines is to eliminate sentencing disparity . . Here, the record indicates that the district court believed incorrectly that it lacked the authority to depart downward based on sentencing disparity.  Because the district court actually had the authority but mistakenly failed to exercise it to determine whether the facts here warranted departure, this court remands for findings as to whether a downward departure is appropriate

L.    Disparity Between State and Federal Sentencing

Kandirakis is entitled to departure because of the disparity between State and Federal sentencing for oxycotin.  In U.S. v. Wilkerson, 411 F.2d (1st Cir. 2005) the First Circuit held that where a district judge "repeatedly expressed his concern about he disparate treatment between federal and state court sentences in similar cases, but states that the Guidelines did not permit him to take that disparity into account . . . case remanded for resentencing in part because of the need to avoid unwarranted disparity."

M.    Acquitted Conduct

Kandirakis is entitled to departure because of acquitted conduct.  See, U.S. v. Monk, 15 F.3d 25, 28-29 (2nd. Cir. 1994) [26]; U.S. v. Concepcion, 983 F.2d 369, 385 (2nd. Cir. 1992); U.S. v. Koczuk, 166 F. Supp. 2nd 757 (EDNY 2001)[27].

---

[25] U.S. v. Jaber, 362 F.Supp. 2d 365 (D. Mass. 2005) (in methamphetamines conspiracy, departure granted in part because defendant tried to cooperate repeatedly but had little to offer and "there is something troubling about the extent to which differences in sentencing were driven not by deference in the crime, but by the happenstance of the way the government indicted, the jurisdictions of the indictment, and who began to cooperate first.  Because of Abu-Lawi's prominence and the timing of his cooperation, the government had virtually all it needed before it got to Jaber.  Some adjustment is essential to reduce unwarranted disparity in this case)

[26] U.S. v. Monk, 15 F.3d 25, 28-29 (2nd. Cir. 1994) (where defendant is acquitted by a jury of distribution and convicted of lesser included of possession, court had power to depart because relevant conduct requires an extraordinary increase in sentence by reason of conduct for which defendant was acquitted);

[27] U.S. v. Koczuk, 166 F. Supp. 2nd 757 (EDNY 2001) (where the defendant was acquitted of five counts but convicted of a single count of importing caviar with a market value of less than $ 100,000.00, but where codefendant convicted of six counts of importing $11, 000,000.00 worth of caviar, offense level has been extraordinarily magnified by a circumstance that bears little relation to defendants role in the offense - - here defendants role in the conspiracy "bore little correlation to the 11 million dollars because the defendant "was not actively involved in the codefendants business and was merely a low level employee).

IV.    FOUR MONTHS' IMPRISONMENT WITH THREE YEARS
       SUPERVISED RELEASE IS THE MINIMALLY SUFFICIENT
       SENTENCE FOR KANDIRAKIS.

As discussed above, *Booker* and 18 U.S.C. § 3553(a)'s parsimony

provision impose a statutory cap on sentences, no matter what is recommended

under the sentencing guidelines: the sentence must be "sufficient, but not greater

than necessary" to achieve the purposes of punishment. Here, it is respectfully

submitted that a sentence of four months' imprisonment followed by three years'

supervised release is sufficient to achieve the goals of punishment.  Justice is

certainly served by this proposed sentence. A four months' imprisonment is a

substantial term for a person with no criminal record.

In short, Kandirakis presents no risk of recidivism. General deterrence is

amply served by the substantial imprisonment component of the proposed

sentence, as well as by the many collateral consequences this case has had for

Kandirakis.

Finally, Kandirakis' need for rehabilitation, while slight relative to many

offenders, is met by the proposed sentence. The proposed sentence will further

solidify Kandirakis' respect for the law.  In determining the minimally sufficient

sentence, the Court must essentially ask whether a more severe sentence would

achieve greater justice, deterrence, incapacitation, or rehabilitation. Respectfully,

it would not in this case. In making this judgment, it is important to examine the

ruination that Kandirakis has already suffered as a result of his conduct and this

prosecution. While these consequences are not a complete substitute for judicial

punishment, they are critically important to assessing what further punishment is

necessary in this case.  Because such consequences satisfy some of the purposes

of punishment, they are widely recognized as grounds for departure under the

sentencing guidelines. *See, e.g.*, *United States v. Speed Joyeros, S.A.*, 204 F. Supp.

2d 412, 439-40 (E.D.N.Y. 2002); *United States v. Redemann*, 295 F. Supp. 2d

887, 894-97 (E.D. Wis. 2003); *United States v. Gaind*, 829 F. Supp. 669, 670-71

(S.D.N.Y. 1993).

     V.     CONCLUSION

     For the reasons discussed above, Kandirakis respectfully requests that the

Court impose a sentence of four months' imprisonment followed by three years'

supervised release.


Respectfully Submitted,
GEORGE KANDIRAKIS
By His Attorney


/s/Rosemary Curran Scapicchio
Four Longfellow Place
37th Floor
Boston, Massachusetts 02114
(617) 263-7400